## ROBINSON v. INSURANCE CO. OF NORTH AMERICA.

(Supreme Court, Appellate Division, Second Department. November 27, 1908.)

1. INSURANCE (§ 668*)—ACTIONS—QUESTIONS FOR JURY—BREACH OF WARRANTY.
   Where the harbor in which a vessel was laid up for the winter became unsafe, and the vessel was burned while sailing to a safer harbor after passing many safe harbors having room for her, the question whether

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

there was a breach of a warranty in the policy that the vessel should be laid up for the winter was one of law, and not of fact.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1739; Dec. Dig. § 668.*]

2. INSURANCE (§ 669*)—ACTION ON POLICY—INSTRUCTIONS.

An instruction which permits the jury to find a waiver of a provision in an insurance policy without stating to them any facts, which, if found by them, would constitute a waiver, is erroneous, as it cannot be determined on what theory the jury found their verdict.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 669.*]

Hooker and Woodward, JJ., dissenting.

Appeal from Trial Term, Richmond County.

Action by Edgar Robinson against the Insurance Company of North America. From a judgment for plaintiff and an order denying its motion for new trial, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

William Harison (Lawrence Kneeland, on the brief), for appellant.
Arnold Charles Weil (Walter S. Newhouse, on the brief), for respondent.

GAYNOR, J. The policy required the yacht to be laid up and out of commission from November 1st to May 1st. On December 12th she was partly destroyed by fire in Long Island Sound while the insured, the plaintiff, was sailing her from New Suffolk, on the Peconic Bay, at the east end of Long Island, to Bay Ridge, Brooklyn, by way of Long Island Sound. The plaintiff claimed that he laid her up for the winter in October at New Suffolk, but deciding afterwards that that was an unsafe harbor, concluded to sail her to Bay Ridge and lay her up there. To do so he had to pass a large number of safe harbors on the Long Island and Connecticut shores. It may sound strange to those familiar with Peconic Bay and the harbor at New Suffolk that that harbor was an unsafe one for such a craft; but however that may be, it must be held as matter of law that the yacht was not laid up while taking the long and unnecessary sail to Bay Ridge, a distance of over 100 miles. If the harbor she was laid up in became unsafe, it was not permissible to move her farther than the next safe harbor that had room for her. The large safe harbor at Greenport, Long Island, was only a few miles away. If it was permissible to sail her to Brooklyn, passing many large and safe harbors on the way, then why not to Newark or the Schuylkill? There was certainly a limit and it would be reached long before getting to Brooklyn. The question was one of law and not of fact.

The learned trial judge also left it to the jury to say whether the said provision of the policy was not waived by the defendant, without stating to them any acts of the defendant or facts, which, if found by the jury, would constitute a waiver. This was error. As it is, if the jury based their verdict on a waiver, no one can tell what they based the waiver on. There could be no waiver not based on facts, and it was for the judge to instruct the jury what facts which if found on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the evidence would constitute or enable them to find a waiver. There do not seem to be any such facts.

The judgment should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. JENKS, J., concurs.

MILLER, J. I agree with Mr. Justice GAYNOR that a breach of the warranty that the yacht should be laid up and out of commission from November 1st to May 1st was established, and that it was error to submit the question to the jury. The point is raised by an exception to the charge, and, as we cannot tell on what theory the jury arrived at its verdict, the judgment must be reversed, irrespective of the question of waiver. But I think that we should not send the case back for a new trial without passing on that question in so far as it is presented by the facts before us.

There was evidence tending to show that on the morning after the fire Mr. Jeremiah, the defendant's general agent, was notified by the plaintiff that the yacht had been partly burned while off Duck Island in Long Island Sound, and had been towed to New London; that he thereupon sent Mr. Crowell, an agent of the defendant, to New London with instructions to attend to the matter; that, upon arriving at New London, Mr. Crowell was informed by the plaintiff's brother of all of the facts in respect to the fire, the alleged laying up of the yacht at New Suffolk and the attempt to navigate her from New Suffolk to Bay Ridge; that Mr. Crowell then communicated with Mr. Jeremiah by telephone, and thereafter, with the latter's approval, took possession of the yacht, entered into a contract with the T. A. Scott Company to submit the latter's claim for salvage to the National Board of Underwriters, and employed said company to tow the yacht to Bay Ridge. I think there was evidence to support a finding that Mr. Crowell had authority to bind the defendant by what he did, and, moreover, that his acts were authorized by Mr. Jeremiah with the full knowledge of the facts constituting the breach of warranty. The making of said contract with the T. A. Scott Company and the taking possession of the yacht with full knowledge of the breach of warranty were unequivocal acts based on the policy in recognition of its continued validity and of the defendant's liability thereon, and evidenced an intention to abandon or not to insist upon the defence of the breach of warranty. See Titus v. Glens Falls Ins. Co., 81 N. Y. 410; Roby v. A. C. Ins. Co., 120 N. Y. 510, 24 N. E. 808; Armstrong v. A. Ins. Co., 130 N. Y. 560, 29 N. E. 991; Kiernan v. Dutchess Co. Mut. Ins. Co., 150 N. Y. 190, 44 N. E. 698; Walker v. Phœnix Ins. Co., 156 N. Y. 628, 51 N. E. 392; Draper v. Oswego Co. Fire Relief Ass'n, 190 N. Y. 12, 82 N. E. 755. However, the evidence does not disclose any fact upon which to found a claim of estoppel. The plaintiff was in no manner harmed or prejudiced by what was done; on the contrary, he was helped by the towing of his yacht to the place where his brother intended to take it. He was not misled into doing or omitting to do anything to his prejudice, and he was not induced to put himself to any trouble or to incur any expense.

Whatever doubt may have existed as to waiver and estoppel being distinct was removed by the Court of Appeals, speaking through its Chief Judge, in the case of Draper v. Oswego Co. Fire Relief Ass'n, supra, and it must now be regarded as settled in this state that a waiver requires no consideration, nor any prejudice or injury to the other party. But the doctrine of waiver can only be invoked where it applies. In the case last above referred to the contract provided that:

"Where fire is used in any building upon the premises within one hundred feet of any insured building for the purpose of making sugar or stripping tobacco or curing hops or drying apples this association will not be liable for any loss resulting from such fire. Nor will this association be liable for any loss resulting from any open fire, built by the insured with his knowledge or consent, within fifty feet from any insured building."

The fire resulted from an open fire ignited by the plaintiff within 50 feet of the building insured; and the court held that the policy did not cover a loss from that cause, that the doctrine of waiver had no application, and that the plaintiff could only succeed by showing a new contract, or that the defendant was estopped to deny that the loss fell within the terms of the policy. In that case the policy provided in terms that the insurer should not be liable in the specified cases, but I apprehend the case would have been no different had the provision been expressed in the terms of a condition or a warranty, because to build up a distinction on mere phraseology would substitute form for substance. In the case at bar the policy contained the following provision:

"Warranted by the assured that the within named vessel shall be laid up and out of commission from November 1st at noon until May 1st at noon, during the currency of this policy."

The fire resulted from the navigation of the vessel in violation of that provision, and the situation is practically the same as though the policy had provided in terms that the defendant should not be liable for loss occurring by reason of the navigation of the vessel between November 1st and May 1st, a provision which would have brought the case squarely within the decision in the Draper Case, supra.

The defendant did not insure against the risks of navigation between November 1st and May 1st. The warranty that the vessel should be laid up and out of commission between those dates in effect created an exception from the risks insured against as much as though the provisions had been expressed in the terms of an exception. We have here the reverse of the situation which the Court of Appeals said, in the concluding paragraph of the opinion in the Draper Case, would not relieve the insurance companies of the effect of a waiver, and the rule must work both ways.

It is unnecessary and would probably be unwise to attempt any generalization of the cases in which the doctrine of technical waiver may be applied. It has been applied to mere formalities and to certain

warranties and conditions, a breach of which works a forfeiture; but it may safely be asserted that it does not apply where the loss results from a risk not insured against, irrespective of whether the controlling provision of the contract be expressed in the terms of an exception, a condition, or a warranty.

The motion to dismiss the complaint should have been granted.

HOOKER, J. (dissenting). Plaintiff has had a verdict in this action upon a marine insurance policy. The vessel insured was a yacht. The policy contained this clause:

"Warranted by the assured that the within named vessel shall be laid up and out of commission from November 1st at noon until May 1st."

The boat was actually laid up about October 1st at New Suffolk in a basin formed by a wharf and breakwater in that harbor. Plumbing was disconnected and the like, though her jib and mainsail were not taken off. The brother of the plaintiff, who had been navigating the boat, testified that he had been told this was a perfectly safe harbor, and went in there with the intention of leaving the boat for the winter. He remained in that vicinity, engaged in scalloping, and observed the last of November that the basin in which the vessel was moored was entirely unsafe, and removed the vessel to go to Bay Ridge for the balance of the winter. On his way to Bay Ridge the vessel was badly burned, and the insurance company declined to pay upon the ground that there was a breach of the warranty to have the vessel laid up from November 1st to May 1st, claiming that while the vessel was navigating the Sound it could not be considered "laid up." At the opening of the trial the learned trial court put the situation very graphically:

"If a boat were laid up in the Erie Basin and the breakwater near which she lay was broken in, and they took her across the Erie Basin to a safer place, and she was burned in passing from the unsafe to the safe place, what would be the condition of that boat during that progress? She would be laid up still, would she not?"

I think, under the evidence, that is this case. The navigator testified that in good faith he laid her up at New Suffolk, and did not attempt to move her until he became convinced that her berth was unsafe. His good faith was attacked by the defendant in various ways, principally that he did not take her sails off as he had done in former winters, that he remained in the vicinity engaged in scalloping, and that instead of moving her to one of a number of safe anchorages nearer than Bay Ridge, which he had to pass in going from New Suffolk to Bay Ridge, yet he took her to the more distant point. All of this evidence, however, merely presented a question of fact for the jury in relation to the good faith of the navigator. Upon sufficient evidence the jury has resolved this question in favor of the plaintiff, and I do not feel that the verdict is against the weight of evidence. Where the question of the good faith of a party is involved, the jury and the court in denying a motion for a new trial is situated where it

has peculiar means of passing upon the credibility of witnesses and the appearance presented by the party whose integrity is assailed.

I advise that the judgment and order appealed from be affirmed, with costs.

WOODWARD, J., concurs.